UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| STARFISH CAPITAL, LLC, | CASE NO. 13-18494 |
| Debtor. _____/ | |

### MOTION OF DRTW, LLC, DS VENTURES, LLC, AND DONALD RUBIN FOR AN ORDER AUTHORIZING AND DIRECTING EXAMINATION OF THE DEBTOR PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

DRTW, LLC, DS Ventures, LLC, and Donald Rubin (collectively, the "Rubin Parties") by and through their undersigned counsel, hereby file this motion for an order pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing and directing the examinations of representatives of Starfish Capital, LLC (the "Debtor") and, in connection with such examinations, requiring the production of relevant documents and records. In support of their motion, the Rubin Parties respectfully submit as follows:

### JURISDICTION

1. This Motion is a core proceeding pursuant to 28 U.S.C. § 157, and this Court has jurisdiction to hear this Motion pursuant to 28 U.S.C. § 1334. Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### FACTUAL BACKGROUND

2. The Debtor filed its chapter 11 petition in this district on April 15, 2013. No trustee has been appointed, and the Debtor remains in possession of its assets as debtor in possession.

3. No official committee of unsecured creditors has been appointed in this case.

4. Each of the Rubin Parties is a creditor of the Debtor.

5. The Debtor is a personal holding company of Omar Amanat and Helena Houdova.

6. The information that has been made available concerning the Debtor's financial, assets and liabilities is incomplete and laden with inaccuracies.

7. The Debtor's Statement of Financial Affairs reflects that the Debtor does not operate a business, generate any income, or have any liquid assets. This calls into question whether it is properly a debtor in a chapter 11 proceeding.

8. The Debtor's Schedules reflect that the Debtor has only a few assets. One of them is title to a single family house in a subdivision in Park City, Utah that is subject to mortgage debt equivalent to the value of the property. Accordingly, there is no equity in this Utah house.

9. The Debtor's other assets include rights under a certain Option Agreement with DRTW, LLC and interests in two affiliates which are limited liability companies.

10. It is unknown whether the Debtor has any resources available to cure its extensive monetary and nonmonetary defaults under the Option Agreement.

11. The Debtor's other assets are illiquid equity interests in two affiliated limited liability companies, which are themselves holding companies. These are listed in the Debtor's schedules as having a value of $2,250,000 in the aggregate.

12. One of these scheduled assets is the membership interest in what is incorrectly identified as 308W78, LLC, which owns a residential building in New York City. This entity

supposedly has a value of $1 million. At the Debtor's 341 meeting on May 14, 2013, the representative of the Debtor, Omar Amanat, was unable to fully explain the basis of this value. Following the meeting, the Debtor has failed to provide the US Trustee with requested additional information regarding the 308W78, LLC entity. Upon information and belief, the actual name of this entity is Townhouse 308W78, LLC.

13. The other limited liability company in which the Debtor has an interest, Black Diamond Hospitality MK, LLC ("Black Diamond Hospitality"), is under common control with the Debtor. Black Diamond Hospitality is itself a debtor in a chapter 11 case pending in this district, No. 13-12876 (S.D. Fla.). Although the Debtor scheduled a value of $1.25 million for its 50 percent equity interest in this entity, the schedules that Black Diamond Hospitality filed in its own chapter 11 proceeding raise substantial questions concerning this value. Black Diamond Hospitality's Statement of Financial Affairs indicates that it has neither income nor a business premises, and a motion to lift the stay is pending with respect to its largest asset. The total scheduled value of Black Diamond Hospitality's assets exceeds the scheduled amount of its liabilities by less than $1 million, so the value of the Debtor's equity interest in that entity would appear be less than $500,000, assuming that this entity even has any value.

14. It is unclear how US Trustee's fees and other administrative expenses in this case will be paid since the Debtor has no income and no cash or other liquid assets. The Debtor has not sought authority to incur any post-petition indebtedness.

15. The Debtor lists only seven creditors in its schedules, all of whose claims are shown in even amounts rounded off to the nearest $10,000. However, the Debtor has failed to schedule its liabilities to DS Ventures, LLC or Donald Rubin.

16.  At least several of the seven scheduled claims appear questionable. One of these creditors, Peak Venture Partners, is clearly an insider under common control, and it is listed on Schedule F as being owed $3 million. Omar Amanat testified that he is also managing member of Peak Venture Partners but that he was uncertain as to the exact amount it has loaned to the Debtor or as to how the Debtor has used those loan proceeds. He also testified that Peak Venture Partners has a security interest in assets of the Debtor, but it is scheduled as an unsecured creditor, not a secured creditor. The US Trustee requested documentation for this and other obligations of the Debtor, but apparently no such documentation has been produced.

17.  Amanat was unable to explain at the 341 meeting the basis of the $770,000 debt scheduled as owing to Acclaim Group of Park City, Utah. He testified that it was some kind of broker, but it is listed in Schedule F without a street address. An internet search fails to show an entity by that name in Park City, Utah.

18.  At the 341 meeting, Omar Amanat testified that another of the scheduled creditors, Karim Samra, might only have a potential claim for a brokerage fee, even though the Schedule F does not indicate that this $500,000 claim is contingent, unliquidated or disputed.

19.  Although Omar Amanat testified that he is a managing member of the Debtor, this is contradicted by the Debtor's filings. The Debtor has represented that it has only two members, Helena Houdova, who owns 99% of the equity interest in the Debtor, and Sean Sullivan, who owns a 1% interest in the Debtor. Amanat is not a member of the Debtor.

20.  Helena Houdova has also held herself out as the managing member of the Debtor.

21. Amanat testified that the Debtor has never filed income tax returns but that it is about to file tax returns. However, in its Statement of Financial Affairs the Debtor responds with "None" to Question 19.c, which asks for a list of all firms or individuals who at the time of the commencement of this case were in possession of the books of account and records of the debtor. The Debtor offered no explanation why no books of account and records are available.

22. The Debtor has failed to file any monthly operating reports.

23. The Rubin Parties desire to obtain more information about the assets, liabilities, transactions and financial condition of the Debtor, including without limitation its prospects for reorganization, its ability to fund ongoing obligations, the means of maximizing values available for creditors, and whether grounds exist for dismissing or converting this case.

## BASIS FOR RELIEF REQUESTED

24. The Debtor's representatives have not done a satisfactory job of explaining its financial affairs. The Debtor's Schedules and Statement of Financial Affairs and the testimony given at the 341 meeting point out the need for further scrutiny of the Debtor's affairs and whether this case should remain as a chapter 11 proceeding. The Rubin Parties seek production of supporting documents from the Debtor and from any third party that may be in possession of records of the Debtor, as well as the opportunity to examine representatives of the Debtor under oath.

25. Rule 2004(a) of the Bankruptcy Rules provides that "[o]n the motion of *any* party in interest, the court may order the examination of *any* entity." (emphasis added). The permitted scope of the examination is far reaching. Pursuant to Rule 2004(b), the examination

"may relate . . . to the acts, conduct or property or to the liabilities or financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate . . . and to any other matter relevant to the case or the formulation of a plan." *Id.* The purpose of a Rule 2004 examination is to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred. *See Cameron v. United States*, 231 U.S. 710, 717 (1914); *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) (quoting *Cameron v. United States*, 231 U.S. 710, 717 (1914)); *see also In re Fearn*, 96 B.R. 135, 138 (Bankr. S.D. Ohio 1989) (holding that Rule 2004's purpose is to ascertain "the extent and location of the estate's assets"); *In re Dinubilo*, 177 B.R. 932, 940 (E.D. Cal. 1993) (same).

26. Consistent with this language, courts have indicated that Rule 2004 allows for an "exceptionally broad" scope of discovery. *In re Duratech Indus.*, 241 B.R. 283, 289 (E.D.N.Y.1999); *see also In re Handy Andy Home Improvement Ctrs. Inc.*, 199 B.R. 376, 379 (Bankr. N.D. Ill. 1996) ("The scope of inquiry under Bankruptcy Rule 2004 is very broad. Great latitude of inquiry is ordinarily permitted."); *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991) ("The understanding generally acceptable today is that the scope of a Rule 2004 examination is very broad. Rule 2004 discovery is broader than discovery under the Federal Rules of Civil Procedure."). The scope of an inquiry permitted under Rule 2004 is broad in order to reveal "the nature and extent of the estate; [ascertain] assets; and [discover] whether any wrongdoing has occurred." *In re Corso*, 328 B.R. 375, 383 (E.D.N.Y. 2005); *see also In re Pan Am. Hospital Corp.*, Nos. 04-11819-BKC-AJC, 04-11820-BKC-AJC, 2005 WL 2445907, at *2 (Bankr. S.D. Fla. Feb. 25, 2005) (noting that "courts have acknowledged the rule's broad scope"); *In re Drexel Burnham Lambert Group, Inc.*, 123

B.R. at 708 ("Starting with the 1978 Code there has been an expansive reading of the rule. . . . It can be legitimately compared to a fishing expedition.") (citing *In re Vantage Petroleum Corp.*, 34 B.R. 650, 651 (Bankr. E.D.N.Y. 1983). This Court has authority to grant the relief requested under Rule 2004 on an ex parte basis. *See* Advisory Committee note to Bankruptcy Rule 2004 ("The motion may be heard ex parte or it may be heard on notice.").

27. The Rubin Parties' proposed examination of the Debtor and related document requests are well within the allowable scope of information that may be sought through Rule 2004. As more specifically identified below, the Rubin Parties intend to investigate, among other things, issues related to the following: (a) formation and organization of the Debtor; (b) capitalization of the Debtor; (c) the assets and transactions of the Debtor; (d) the management of the Debtor's assets; (e) the books and records maintained by or on behalf of the Debtor; (f) any bank accounts or other accounts owned by the Debtor or in which the Debtor holds an interest; (g) the liabilities of the Debtor and the transactions giving rise to those liabilities; (h) loans or other transfers of money made to or on behalf of the Debtor; (i) the Debtor's ability to pay ongoing administrative obligations; (j) the conduct of the Debtor in the course of its relationship with related persons and entities; (k) the Debtor's ability to cure defaults and provide adequate assurances of future performance under its Option Agreement with DRTW; (l) the prospects for a reorganization of the Debtor and the Debtor's access to funding to finance such a reorganization; and (m) issues relating to whether this case should be dismissed or converted to a chapter 7 proceeding. The Rubin Parties believe that the information gathered in these areas of inquiry will play a critical role in determining the future of this chapter 11 proceeding and the rights of various creditors.

28. The Rubin Parties have serious concerns that the Schedules and Statement of Financial Affairs do not contain complete and accurate information. Unless informed by a careful examination of representatives of the Debtor and review of the Debtor's books and records, the Rubin Parties, as well as other creditors and parties in interest in this proceeding, cannot understand the nature and extent of the Debtor's financial condition and the rights of the various parties. Given the extensive relationship between the Debtor and certain related entities prior to the bankruptcy, there is no question that the information sought in this requested examination is highly relevant and important to the case.

29. Applying the foregoing principles, the Court should find that the Rubin Parties are entitled to conduct a Rule 2004 examination of representatives of the Debtor, as well as the production of relevant documents and records.

## RELIEF REQUESTED

30. The Rubin Parties respectfully request that the Court enter an order pursuant to Rule 2004 of the Bankruptcy Rules authorizing them to conduct oral examinations of the following witnesses no later than 30 days after the entry of an order authorizing the examinations at a mutually agreed upon location:

    a. Omar Amanat, the manager of the Debtor;

    b. Helena Houdova, the owner of 99% of the membership interest in the Debtor; and

    c. One or more other representatives of the Debtor to provide testimony regarding the matters identified above.

31. Moreover, the Rubin Parties respectfully request that the Court enter an order pursuant to Rule 2004 of the Bankruptcy Rules directing the Debtor to produce the documents and records identified in Exhibit A attached hereto and to notify the Rubin Parties of any other party which may be in possession of any of such documents and records within 10 business days of the entry of an order granting the relief requested herein.

32. To the extent any of the requested documents and records is in the possession of a third party, the Rubin Parties also seek authority to issue one or more subpoenas for production of such documents and records and oral examinations of the custodians of those documents and records.

## CONCLUSION

For these reasons, the Rubin Parties respectfully request that the Court enter an order pursuant to Rule 2004 authorizing examinations by deposition of designated representatives of the Debtor, production of requested books and records, and issuance of subpoenas to any third parties in possession of the Debtor's documents and records, and granting such other and further relief as is just under the circumstances.

## CERTIFICATION

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court as set forth in the local rules.

I FURTHER HEREBY CERTIFY that, pursuant to L.R. 9073-1(D), I, Stephen Bobo, Esq., emailed Mr. Aresty, counsel for the debtor, on June 13, 2013 in an attempt to resolve the matter without hearing.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 13, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to Joel M. Aresty, Esq., Attorney for Debtor, 13499 Biscayne Blvd., #T-3, N. Miami, FL 33181 and Heidi A. Feinman, Office of the US Trustee, 51 SW 1st Ave., #1204, Miami, FL 33130 and also served a copy via email to Stephen T. Bobo, Esq. (sbobo@reedsmith.com), Reed Smith, LLP, co-counsel for DRTW, LLC, DS Ventures, LLC and Donald Rubin, 10 S. Wacker Drive, 40th Floor, Chicago, IL 60606.

Respectfully submitted,

NASON, YEAGER, GERSON, WHITE & LIOCE, P.A.
1645 Palm Beach Lakes Boulevard, Suite 1200
West Palm Beach, Florida 33401
Telephone:    (561) 686-3307
Facsimile:    (561) 656-6547
E-mail:        mnullman@nasonyeager.com
*Attorneys for Creditors DRTW, LLC, DS Ventures, LLC and Donald Rubin*
Florida Bar No.: 17596


By:___s/ Michael H. Nullman___.
      MICHAEL H. NULLMAN

REED SMITH LLP
10 South Wacker Drive
Chicago, IL 60606-7507
Telephone: 312-207-1000
Facsimile: 312-207-6400
E-mail: SBobo@ReedSmith.com
*Attorneys for Creditors DRTW, LLC, DS Ventures, LLC and Donald Rubin*


By:_s/Stephen T. Bobo_____
      STEPHEN T. BOBO

H:\9889\22546\Starfish - motion for 2004 exam of debtorMHN.docx/sjj

## LISTING OF DOCUMENTS TO BE PRODUCED BY STARFISH CAPITAL, LLC

As used below, the term "document" or "documents" means any tangible thing upon which any expression, communication, data, or representation has been recorded by any means including, but not limited to, handwriting, typewriting, printing, Photostatting, electronic mail (e-mail), entry into a computer, photographing, magnetic impulse, or mechanical or electronic recording, and any non-identical copies (whether different from the original because notes made on such copies, because of indication that said copies were sent to different recipients than were the originals, or because of any other reason), including but not limited to working papers, preliminary, intermediate or final drafts, correspondence, memoranda, charts, notes, records of any sort of meetings, invoices, financial statements, financial calculations, financial records, diaries, reports of telephone or other oral conversations, desk calendars, appointment books, audio or video tape recordings, microfilm, microfiche, computer tape, computer disk, computer printout, computer care, and all other writings and recordings of every kind that are in the Debtor's possession, custody or control.

1. All limited liability company organizational documents for the Debtor.

2. All documents relating to any limited liability company agreement or operating agreement for the Debtor.

3. All documents reflecting or relating to the purchase, sale or transfer of membership interests in the Debtor.

4. Any and all financial statements generated by or prepared for the Debtor for any period since it was organized, whether in draft or final form.

5. Copies of all account statements for any account in the name of, or held on behalf of, the Debtor at a bank, brokerage firm or other financial institution.

6. All documents relating to or reflecting any funds of the Debtor held by any third party.

7. Records showing any infusions of capital by or on behalf of the members of the Debtor.

8. All documents evidencing or relating to transactions between the Debtor and any of the following persons or entities:

   1. Omar Amant;
   2. Helena Houdova;
   3. Sean Sullivan;
   4. 308 W 78, LLC;
   5. Black Diamond Hospitality Marketing, LLC;
   6. Acclaim Group;
   7. DRTW, LLC;
   8. Karim Samra;
   9. Peak Ventures Partners;
   10. Social Internet Fund;
   11. Wedbush Securities; and
   12. Zeshan Holdings, Ltd.

9. All documents reflecting or relating to contracts between the Debtor and any other person or entity.

10. All documents evidencing or relating to loans, funding commitments or other agreements by which any third party will advance funds to pay for some or all of the administrative expenses incurred by the Debtor in its bankruptcy proceeding.

11. All documents reflecting or relating to sources of funds used to pay the Debtor's attorneys' fees and other expenses relating to the Debtor's bankruptcy proceeding.

12. All documents reflecting or relating to sources of funds that are or may be available to the Debtor to cure existing defaults under the Option Agreement with DRTW, LLC.

13. All documents reflecting or relating to sources of funds that are or may be available to the Debtor in connection with reorganizing its affairs under a chapter 11 plan.

14. All documents reflecting or relating to any transfers of property of the Debtor, or of property in which the Debtor held an interest, from January 1, 2009 to the present.

15. All documents reflecting or relating to the sources of funds used by the Debtor to acquire its ownership interests in 308 W 78, LLC, Black Diamond Hospitality Marketing, LLC, and the real estate located at 2742 Bitterbrush Drive, Park City, Utah.

16. All documents reflecting or relating to any property in which the Debtor holds an interest which is in the possession, custody or control of another person or entity.

17. All documents relating to the Debtor's ability to cure existing monetary and non-monetary defaults under the Option Agreement with DRTW, LLC.

18. All documents reflecting or relating to the Debtor's plans or ability to provide DRTW, LLC with adequate assurances of future performance under the Option Agreement with DRTW, LLC.

19. All ledgers, journals and other books or records of account, however kept, which record or reflect financial or business transactions of the Debtor or which relate to the Debtor and its assets or liabilities.

20. All documents relating to income tax returns for the Debtor, including information to be shown on or contained in such tax returns.

21. All documents relating to leases or executory contracts to which the Debtor is a party.

22. All documents reflecting or relating to security interests, mortgages or other liens held by any other person or entity on assets of the Debtor.

23. All documents that affirm or verify that Omar Amanat is authorized to manage the affairs of the Debtor and to represent the Debtor in dealings with third parties.